## Case No. 4,841.

FITZHUGH v. The COMMERCE.

[38 Hunt, Mer. Mag. 193.]

Circuit Court, D. New York.[1] Sept., 1857.

NELSON, Circuit Justice. The libel in this case was filed by the owners of the barge Isabella against the Commerce for a collision on the North river, near Castleton, some ten miles below Albany. The steamboat Indiana was ascending the river on the east side with a tow of ten boats. The Isabella, the one in question, with barge Cleveland, were the last tier, and were connected by a hawser to the tug. There was an intermediate tier of four canal boats, also connected by a hawser, some two hundred feet in advance of the two last. The Indiana had passed Mull Island, and had straightened up on the east side of the river, as near as it was safe for her to go, and had advanced so far that the last tow was opposite or just above the head of the island. The Commerce had left Albany that evening, and was descending the river on the west side, the Oregon following her at a distance of a few hundred yards. The night was not very dark. The Commerce, after passing the Indiana west from seventy to one hundred feet, when about opposite the second tier of tows took a sheer to the east, and thus changing her course, struck the Isabella, which was lashed to the larboard side of the Cleveland, and, of course, nearest the Commerce, sinking vessel and cargo.

The court below was of opinion, upon the proofs, that the Isabella was wholly in fault, being out of place at the time, and far in towards the west shore, and in the track of the Commerce, and dismissed the libel. [Case unreported.] The conflict and obscurity of the proofs on this point have been very much cleared up by the evidence of the pilot of the Oregon, who had charge of that vessel, which has been taken in this court since the appeal. The evidence of the master of the Indiana, and of six of the tows, is very full and explicit, that, at the time of the sheer of the Commerce, the two last tows, the Isabella and Cleveland, were on a line, or nearly in a line, with the tug, which confessedly was as far to the east shore as was safe; and the master of the Cleveland, to which vessel the Isabella was lashed, states that his vessel was about as

---

[1] [District not given.]

near the shore as was prudent for him to go. And further, they all agree that there was room enough for the Commerce to have passed west of the tow, and that the sheer was unnecessary, and the direct cause of the collision. These witnesses all saw the sheer, which, indeed, is admitted by the witnesses for the Commerce: and, apprehending a collision in consequence, watched the course of the vessel until it happened. They speak, therefore, with confidence as to the transaction; and, indeed, cannot well be mistaken; and they are fully confirmed by the testimony of the pilot of the Oregon, who also apprehended the collision when he saw the sheer, and kept his eye on the Commerce. The evidence of this pilot, who was first pilot of the Oregon, very much shakes the testimony of Wilson, the second pilot, who was examined on behalf of the respondents in the court below.

The defense set up to justify the sheer is placed on two grounds: (1) That there was a light on the Isabella, and that the pilot of the Commerce supposed, and had a right to suppose, she was a vessel at anchor; and that, being well out in the channel of the river, he made the sheer to pass her on the east side; and (2) that she was so far out in the channel there was not room to pass her on the west side. As we have already said, the testimony of the captain of the tug, and of six of the tows, is very strong to show that the pilot was mistaken as to the room in the channel west of the Isabella. But in addition to this, is the evidence in this case of the pilot of the Oregon, who was looking on, and who passed over the tract just at or near the moment of the collision. And as it respects the light on the Isabella, it was in the hand of the master, who was moving about on the boat at the time, and, under the circumstances, we cannot but be of opinion that if proper attention had been given to the navigation of the Commerce, it would have aided in admonishing the pilot of her position as one of the tows of the Indiana instead of confusing or embarrassing him. The pilot of the Oregon, who had charge of that vessel and who was several hundred feet behind the Commerce, had no difficulty at the time in regarding this vessel with the light as the tow of the Indiana, and apprehended a collision from the moment of the sheer of the Commerce. The channel of the river was only from three to four or five or six hundred feet wide at the place of the collision in which were the Indiana with her ten tows ascending slowly the river—the Commerce and Oregon descending, and in respect to which navigation some embarrassment existed, and yet, the weight of the proof is, that the speed of the Commerce was not checked till the moment of the collision, nor any of the usual precautions taken under such circumstances. The Oregon immediately checked her speed, and took measures to prevent any accident.